337 F.3d 1332
 YANCHENG BAOLONG BIOCHEMICAL PRODUCTS COMPANY, LTD., Plaintiff-Appellant,
v.
UNITED STATES, Defendant-Appellee, and
Crawfish Processors Alliance, Louisiana Department of Agriculture & Forestry, and Bob Odom, Commissioner, Defendants.
 No. 03-1059.
 United States Court of Appeals, Federal Circuit.
 August 4, 2003.
 
 J. Kevin Horgan, deKieffer & Horgan, of Washington, DC, argued for plaintiff-appellant.
 A. David Lafer, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Associate Attorney General; and David M. Cohen, Director.
 Before MAYER, Chief Judge, NEWMAN and PROST, Circuit Judges.
 MAYER, Chief Judge.
 
 
 1
 Yancheng Baolong Biochemical Products Company, Ltd. ("YBB") appeals the judgment of the Court of International Trade upholding the Department of Commerce's ("Commerce") rescission of its antidumping duty review of YBB's imports because YBB made no sales of the subject merchandise during the period of review. Yancheng Baolong Biochemical Prods. Co. v. United States, 219 F.Supp.2d 1317 (CIT 2002). Because substantial evidence supports Commerce's decision to rescind the review, we affirm.
 
 
 Background
 
 
 2
 In 1997, Commerce issued an antidumping duty order on freshwater crawfish tail meat from the People's Republic of China. See Notice of Final Determination of Sales at Less Than Fair Value: Freshwater Crawfish Tail Meat From the People's Republic of China, 62 Fed. Reg. 41,347-02 (Aug. 1, 1997). In September of 1999, YBB requested that its exports be included in the administrative review of the order for the period of review September of 1998 to September of 1999. Commerce rescinded the review with respect to YBB in April of 2001 because it concluded that YBB had made no sales to the United States during the period of review. Freshwater Crawfish Tail Meat from the People's Republic of China; Notice of Final Results of Antidumping Duty Administrative Review and New Shipper Reviews, and Final Partial Rescission of Antidumping Duty Administrative Review, 66 Fed. Reg. 20634, 20635 (Apr. 24, 2001). Commerce found instead, that Yancheng Asia Europe Seafoods, Co., Ltd. ("Asia Europe"), with whom YBB executed a management agreement dated February 5, 1999, was the seller of the subject merchandise. YBB appealed to the Court of International Trade. The court affirmed Commerce's rescission, finding that substantial evidence supported Commerce's determinations that YBB made no sales in the relevant period, and that YBB and Asia Europe were not a single entity. YBB, 219 F.Supp.2d at 1320. YBB appeals and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).
 
 
 Discussion
 
 
 3
 We review the grant of judgment on the agency record by the Court of International Trade without deference. PPG Indus., Inc. v. United States, 978 F.2d 1232, 1236 (Fed.Cir.1992). We apply anew the same standard used by the court, Camargo Correa Metais, S.A. v. United States, 200 F.3d 771, 773 (Fed.Cir.1999), and will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law," 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). Commerce may rescind an administrative review with respect to a particular exporter if, "during the period covered by the review, there were no entries, exports, or sales of the subject merchandise, as the case may be." 19 C.F.R. § 351.213(d)(3) (2002).
 
 
 4
 YBB argues that substantial evidence does not support Commerce's conclusion that it did not export the subject merchandise. But YBB passed its sales contracts to Asia Europe in exchange for management services because it could not fulfill the contracts. The management contract between YBB and Asia Europe states that "Party A [Asia Europe] will clear customs in USA in the name of Party B[YBB] during exporting and selling the products, while the actual purchase amount can be entered into Party A's [Asia Europe's] account finally." It also stipulates that "Party A [Asia Europe] will possess party B's [YBB's] sales and management authority to USA market completely." The record reflects that Asia Europe was the seller of the subject merchandise.
 
 
 5
 YBB also asserts that there was "confusion regarding the proper name of the party" for which the review was to be conducted; and YBB should be interchangeable with Asia Europe. The record shows, however, that YBB and Asia Europe are separate divisions within the Baolong Group. And the information required to determine whether they were affiliated producers was not timely submitted. See 19 C.F.R. § 351.401(f) (2002). The request for an administrative review submitted by YBB clearly states that its exports be included. If the request had named Asia Europe as the party whose exports would be examined, Commerce would have done so. See id. § 351.213(b)(1) ("Each year during the anniversary month of the publication of an antidumping or countervailing duty order, ... an interested party ... may request in writing that the Secretary conduct an administrative review under section 751(a)(1) of the Act of specified individual exporters or producers covered by an order ...") (emphasis added).
 
 
 Conclusion
 
 
 6
 Accordingly, the judgment of the Court of International Trade is affirmed.
 
 
 AFFIRMED